☒ FILED ☐ RECEIVED

**Sep 21 2026**

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

Jason Mathis #309314
Name and Prisoner/Booking Number

Red Rock Correctional Center
Place of Confinement

801 E. Jefferson St.
Mailing Address

Phoenix, AZ 85034
City, State, Zip Code

**(Failure to notify the Court of your change of address may result in dismissal of this action.)**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Jason Mathis,
(Full Name of Plaintiff)

Plaintiff,

v.

(1) Core Civic,
(Full Name of Defendant)

(2) Officer Mar,

(3) Sgt. Sosa,

(4) Lt. Carreno,

Defendant(s).

☐ Check if there are additional Defendants and attach page 1-A listing them.

CASE NO. CV-26-6769-PHX-KML(MTM)
(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT**
**BY A PRISONER**

JURY TRIAL DEMANDED

☒ Original Complaint
☐ First Amended Complaint
☐ Second Amended Complaint

**A. JURISDICTION**

1. This Court has jurisdiction over this action pursuant to:
   ☒ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
   ☐ 28 U.S.C. § 1331; *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).
   ☐ Other: ______

2. Institution/city where violation occurred: Red Rock Correctional Center / Eloy.



550/555

## B. DEFENDANTS

1. Name of first Defendant: Core Civic. The first Defendant is employed as: Private Corporation Security Contractor (Position and Title) at RRCC (Institution).

2. Name of second Defendant: Officer Mar (Individual Capacity). The second Defendant is employed as: as: Correctional / Security officer (Position and Title) at RRCC (Institution).

3. Name of third Defendant: Sgt. Sosa (Individual Capacity). The third Defendant is employed as: Correctional / Security Sergeant (Position and Title) at RRCC (Institution).

4. Name of fourth Defendant: Lt. Carreno (Individual Capacity). The fourth Defendant is employed as: Correctional / Security Lieutenant (Position and Title) at RRCC (Institution).

**If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.**

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner? ☒ Yes ☐ No

2. If yes, how many lawsuits have you filed? 5. Describe the previous lawsuits:

a. First prior lawsuit:
   1. Parties: Mathis v. Core Civic, et al.
   2. Court and case number: CV-26-04631-PHX-KML (MTM).
   3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) Still pending.

b. Second prior lawsuit:
   1. Parties: Mathis v. Core Civic, et al.
   2. Court and case number: CV-23-00323-PHX-MTL (MTM).
   3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) Settlement reached, Stipulated dismissal.

c. Third prior lawsuit:
   1. Parties: Mathis v. Centurion, et al.
   2. Court and case number: CV-19-00011-TUC-SHR.
   3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) Settlement reached, Stipulated dismissal.

**If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.**

Cont. from Pg. 2 Previous Lawsuits

d. Mathis V. Pima County, et al.
Federal (District of Arizona)
Voluntarily dismissed by me

e. Mathis v. Tucson, City of, et al.
Federal (District of Arizona)
Dismissed due to Statute of limitations

## D. CAUSE OF ACTION

### COUNT I

1. State the constitutional or other federal civil right that was violated: First Amendment Retaliation.

2. **Count I.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
☐ Basic necessities ☐ Mail ☐ Access to the court ☐ Medical care
☐ Disciplinary proceedings ☐ Property ☐ Exercise of religion ☒ Retaliation
☐ Excessive force by an officer ☐ Threat to safety ☐ Other: ______.

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count I. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

1) On September 13, 2026, I was housed in X-Ray Bravo at RRCC.

2) At approximately 10:30 a.m., Defendant Officer Mar cleared the prisoners from the X-Ray Bravo day room and closed the day room door.

3) Officer Mar was informed that, according to RRCC's published 24-Hour Building Schedule, the day rooms in X-Ray and Victor Units were scheduled to be closed from approximately 2200 hours until 0500 hours, not at 10:30 a.m.

4) I questioned the deviation from the published schedule and requested that Mar contact a sergeant.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s). Fear of disciplinary retaliation, intimidation concerning use of the grievance process, emotional distress, loss of security, and chilling of my First Amendment rights and activity.

5. **Administrative Remedies:**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes ☐ No
   b. Did you submit a request for administrative relief on Count I? ☐ Yes ☒ No
   c. Did you appeal your request for relief on Count I to the highest level? ☐ Yes ☒ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. Defendants' threats actually deterred me from submitting grievances because I reasonably believed they would carry out the threatened disciplinary retaliation.

Cont. from Pg. 3 Supporting facts

5) Mar responded, in substance, that he did not care what the schedule stated and that this was how he was going to run the unit.

6) I requested that Mar contact Lt. Carreno, whom I had already seen working that day.

7) Mar refused.

8) I then asked Mar for his name and employee or badge number, explaining that I needed the information because I intended to submit a grievance concerning Mar's conduct.

9) Mar provided his name, but refused to provide his employee or badge number.

10) I again requested Mar's employee number as Mar was leaving, and again informed him I needed it to submit a grievance

Cont. from Pg. 3-A

11) In direct response to my stated intention to submit a grievance, Mar told me, in substance, that I would learn his employee number from the ticket he would write against me if I submitted a grievance.

12) Mar then left X-Ray Bravo.

13) I understood Mar's statement as a direct threat that I would be charged with a disciplinary offense if I exercised my right to use the prison grievance procedure.

14) Approximately ten minutes later, Mar returned to X-Ray Bravo accompanied by Defendant Sgt. Sosa.

15) I explained the situation to Sosa and Mar, including the published building schedule and my objection to their deviation from it.

16) I again requested to speak to Lt. Carreno.

17) I was told that Carreno was busy.

Cont. from Pg. 3-B

18) I stated that I would submit a grievance concerning the matter.

19) Mar and Sosa then left.

20) At approximately 11:00 am., Defendant Sgt. Sosa returned to my housing location accompanied by an unknown officer.

21) Sosa confronted me at my housing location (XB-43), in an area where most of my housing unit were present and could hear the confrontation.

22) Sosa told me she had spoken to Lt. Carreno.

23) Sosa stated, in substance, that Carreno had decided that because I wanted to make a big deal about the day-room and submit grievances, the X-Ray Bravo day room would remain closed for the rest of the day.

Cont. from Pg. 3-C

24) By making this statement at my housing location, Sosa publicly identified my contemplated grievance as the reason that the entire housing unit would be denied use of the day room.

25) I responded that Defendants should not punish the housing unit because I intended to submit a grievance.

26) Sosa then told me that if I submitted the grievance, she would write me a ticket for inciting a riot.

27) I had not incited a riot, encouraged violence, threatened anyone, or engaged in conduct that reasonably constituted inciting a riot.

28) I understood Sosa's statement as a direct threat to charge me with a serious disciplinary violation solely because I intended to use the grievance process.

29) Approximately one hour later, after the yard reopened, another prisoner and I went to locate Lt. Carreno.

Cont. from Pg. 3-D

30) I did so because I did not initially believe that Carreno would intentionally order the day room remain closed merely because I asked questions and intended to file a grievance.

31) We located Carreno in or near R&D.

32) I asked Carreno about Sosa's representation.

33) Carreno personally confirmed that he had directed or approved the continued closure of the X-Ray Bravo day room because I wanted to make a big deal about the matter and submit a grievance.

34) Carreno thereby personally confirmed that my intended grievance was a substantial or motivating reason for keeping the day room closed.

35) I was concerned that continuing to challenge Carreno would cause additional punishment, disciplinary charges, collective sanctions, or additional adverse action.

Cont. from Pg. 3-E

36) I therefore stopped pursuing the matter with Carreno at that time.

37) My decision to stop pursuing the matter was caused by the escalating retaliatory conduct and threats made by Defendants Mar, Sosa, and Carreno.

38) Within approximately one hour, three employees at three different levels of authority - an officer, a segeant, and a lieutenant - either threatened punishment or imposed punishment expressly because I stated that I intended to use the grievance procedure.

39) Defendants' statements were made in the presence or hearing of other prisoners and/or caused other prisoners to learn that defendants were blaming me for the continued closure of the X-Ray Bravo day room.

40) The threats and adverse actions caused me to fear additional discipline and retaliation if I used the grievance process.

Cont. from Pg. 3-F

41) The threats and actions would also deter a person/prisoner of ordinary firmness from filing or pursuing a grievance.

42) None of the retaliatory threats were necessary to maintain institutional order.

43) Threatening me with fabricated or retaliatory disciplinary charges because I proposed filing a grievance served no legitimate Correctional purpose. Continuing to close the day room because I proposed filing a grievance likewise served no legitimate correctional purpose.

44) I engaged in, or attempted to engage in, constitutionally protected conduct when I informed Defendants that I intended to submit grievances challenging staff conduct.

45) My conduct consisted of seeking administrative review of prison officials' actions and did not involve violence, threats, disruption, or unlawful conduct.

Cont. from pg. 3-G

46) The conduct of Defendants Mar, Sosa, and Carreno chilled my exercise of my First Amendment rights.

47) I stopped challenging the Defendants and did not file any grievances because I feared receiving disciplinary charges or provoking additional retaliatory punishment.

48) Defendants' actions were arbitrary, retaliatory, unnecessary to institutional order, and undertaken to deter me from seeking administrative redress.

49) Core Civic has the policy, custom, or accepted practice of allowing retaliatory conduct by their employees with little to no discipline. This can be shown by how many incidents in a short time with me and by how often it happens here at RRCC.

50) Defendants Core Civic, Officer Mar, Sgt. Sosa, and Lt. Carreno therefore violated my rights under the First Amendment.

## COUNT II

1. State the constitutional or other federal civil right that was violated: Eighth Amendment

2. **Count II.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
☐ Basic necessities ☐ Mail ☐ Access to the court ☐ Medical care
☐ Disciplinary proceedings ☐ Property ☐ Exercise of religion ☐ Retaliation
☐ Excessive force by an officer ☒ Threat to safety ☐ Other: ______

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

51) I incorporate paragraphs 1-50 as if fully set forth here.

52) The Eighth Amendment requires prison officials to take reasonable measures to protect prisoners from substantial risks of serious harm, including violence at the hands of other prisoners.

53) Conditions creating a substantial risk that a prisoner will be assaulted or seriously harmed satisfy the objective component of an Eighth Amendment failure-to-protect claim.

54) Prison officials violate the Eighth Amendment when they know that a prisoner faces a substantial risk of serious harm and deliberately disregard that risk.

55) Prison officials also may not intentionally create a dangerous situation that exposes a prisoner to retaliation or violence from other prisoners.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
Fear, Emotional Distress, loss of security, exposure to hostility, fear of retaliation.

5. **Administrative Remedies.**
a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes ☐ No
b. Did you submit a request for administrative relief on Count II? ☐ Yes ☒ No
c. Did you appeal your request for relief on Count II to the highest level? ☐ Yes ☒ No
d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. Defendants' threats actually deterred me from submitting grievances because I reasonably believed they would carry out the threatened disciplinary retaliation.

Cont. from Pg. 4 supporting facts

56) Defendant Sgt. Sosa publicly told me at my housing location (XB-43) that the X-Ray Bravo day room would remain closed because I had made a big deal out of it and intended to file grievances.

57) Sosa made this statement in circumstances where other prisoners were present, could hear the accusation, or subsequently learned that I was being blamed for the loss of their day room privileges.

58) Defendant Lt. Carreno originated, approved, or expressly ratified that action and subsequently confirmed that the day room was being Kept Closed because I made a big deal out of it and intended to submit a grievance.

59) Sosa and Carreno thereby intentionally singled me out as the cause of a collective deprivation imposed upon an entire prisoner housing unit.

Cont. from Pg. 4-A

60) Sosa and Carreno knew, or should know, that prisoners housed together in a correctional setting may respond with hostility or violence toward a prisoner whom staff publicly identify as responsible for the loss of recreation or day room privileges.

61) The risk was particularly foreseeable because Defendants affirmatively linked the continued deprivation to me personally instead of merely closing the day room without identifying a prisoner as its cause.

62) Defendants nevertheless failed to retract their statements, correct the impression that I was responsible for collective punishment, reopen the day room, or otherwise take reasonable measures to mitigate the risk they had created.

63) Defendants' conduct was not an accidental or negligent disclosure. The connection between me and the collective punishment was deliberately announced as a consequence of my questioning them and my intention to file a grievance.

Cont. from Pg. 4-B

64) Defendants therefore knew of and deliberately disregarded the substantial risk of serious harm created by publicly identifying me as the reason other prisoners were losing privileges.

65) Defendant Core Civic has the policy, custom, or accepted practice of allowing staff to publicly threaten, cajole, or create substantial risks to inmates' safety by linking them to loss of privileges or punishments. This is not an isolated incident, these actions are so common as to become standard operating procedure for staff here at RRCC.

66) Defendants Core Civic, Sgt. Sosa, and Lt. Carreno violated my Eighth Amendment right to reasonable protection from violence and substantial threats to my safety.

## E. REQUEST FOR RELIEF

State the relief you are seeking:
A) Enter judgment declaring that Defendants' Conduct violated my rights under the First and Eighth Amendments;
B) Nominal Damages;
C) Compensatory Damages;
D) Punitive Damages against Mar, Sosa, and Carreno, and any other Defendants as allowable by law;
Cont. →

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 9/21/2026
DATE

[signature]
SIGNATURE OF PLAINTIFF

(Name and title of paralegal, legal assistant, or other person who helped prepare this complaint)

(Signature of attorney, if any)

(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If you need more space, you may attach no more than fifteen additional pages. But the form must be completely filled in to the extent applicable. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.

Cont. from Pg. 6 Request For Relief

E) Enter appropriate prospective injunctive relief prohibiting retaliation against me;

F) Attorneys fees and costs of this action;

G) Grant such other relief as the Court deems just and proper.